

1095 Avenue of the Americas
New York, NY 10036
+1 212 698 3500 Main
+1 212 698 3501 Fax
www.dechert.com

DAVID A. KOTLER

david.kotler@dechert.com
+1 609 955 3226 Direct
+1 609 873 9135 Fax

May 4, 2015

**VIA ECF**
Honorable Edgardo Ramos, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *Chill, et al. v. Calamos Advisors LLC, et al.*, No. 15 CV 01014 (ER)

Dear Judge Ramos:

This firm represents the Defendants, Calamos Advisors LLC ("CA") and Calamos Financial Services ("CFS"), in the above action, which is brought under section 36(b) of the Investment Company Act of 1940 ("ICA"). Pursuant to Your Honor's Individual Practices, Defendants respectfully seek a pre-motion conference with respect to their motion to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs purport to be shareholders in the Calamos Growth Fund (the "Fund"), a mutual fund organized as an "investment company" under the ICA. In accordance with the written and publicly-disclosed agreements approved by the Fund's six member Board of Trustees – five of whom are undisputedly "independent" as defined by the ICA – CA serves as the Fund's investment adviser and CFS serves as the Fund's distributor.

Plaintiffs do not (and cannot) contest that the fees paid annually by the Fund to CA and CFS as specified in their respective agreements were fully disclosed in the Fund's SEC filings and shareholder reports. Nor do (or can) Plaintiffs contest that they have remained Fund shareholders "continuously" since 2005 (Cmplt. ¶ 10) in spite of both the size of these fees (which, as Plaintiffs concede, have not changed materially over the years (*id.* ¶¶ 79-88, 213)) and the Fund's alleged underperformance relative to certain benchmarks for various periods since 2005 (*id.* ¶ 123). Nevertheless, Plaintiffs now charge that the fees paid to CA and CFS for the year prior to the filing of the Complaint are unlawfully "excessive" under section 36(b) of the ICA.

To be clear, Plaintiffs are pursuing a claim that the Second Circuit and numerous courts within this District have uniformly rejected – often at the pleading stage – for decades. Indeed, not a single plaintiff has <u>ever</u> prevailed at trial on a section 36(b) claim in the 45 years since Congress amended the ICA to include this provision.

The consistency of this result is not an accident. The ICA makes the Independent Trustees who sit on a mutual fund's board the primary protectors of the fund and its shareholders in their dealings with service providers to the fund, most particularly the adviser. In the words of the Supreme Court, the Independent Trustees function as the "watchdogs" of the relationship

US Austin Boston Charlotte Hartford Los Angeles New York Orange County Philadelphia Princeton San Francisco Silicon Valley
Washington DC EUROPE Brussels Dublin Frankfurt London Luxembourg Moscow Munich Paris ASIA Beijing Hong Kong



between the fund and the adviser. *Burks v. Lasker*, 441 U.S. 471, 482 (1979). Consequently, if the trustees are independent and have engaged in a thorough process to determine the appropriateness of the fee arrangement between the fund and the adviser/distributor, the law is clear that "Congress did not intend the Courts to 'second-guess' the business judgment of the independent trustees with respect to the size of the investment advisory fee." *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 528 F. Supp. 1038, 1045 (S.D.N.Y. 1981), *aff'd*, 694 F.2d 923 (2d Cir. 1982). To the contrary, the judiciary is instructed to afford deference to the Independent Trustees' judgments, as opposed to making its own evaluation of the "reasonableness" of the fees. Accordingly, courts in this Circuit particularly have not hesitated to dismiss claims that fail sufficiently to allege facts that, if true, would meet section 36(b)'s demanding standard.[1]

Here, as the Fund's public filings make perfectly clear, the Independent Trustees engaged in an intensive and rigorous process, guided by sophisticated independent counsel, to arrive at what they concluded were reasonable fee arrangements with CA and CFS.[2] Thus, to state a claim that those fee arrangements were "excessive" in violation of Section 36(b), Plaintiffs must do more than lob tired criticisms at the mutual fund industry as a whole (*e.g.*, Cmplt. ¶¶ 19-25, 144-61, 205-09, 214-16) or contend in conclusory fashion that the fees were too high. Rather, to overturn the "considerable weight" given to judgment of the Independent Trustees, Plaintiffs must allege specific and plausible facts showing that the Fund's Independent Trustees so failed in their duty as to permit CA and CFS to charge "a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones*, 559 U.S. at 345-46; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs do not come close to clearing this meaningful hurdle erected by Congress and enforced by the courts. To the contrary, Plaintiffs' Complaint is comprised of reprised allegations that courts repeatedly have rejected, frequently at the pleading stage. Solely by way of example:

---

1 *E.g.*, *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338 (2d Cir. 2006); *Mintz v. Baron*, 2009 WL 735140 (S.D.N.Y. March 20, 2009); *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522 (S.D.N.Y. 2008); *In re Scudder Mut. Funds Fee Litig.*, 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007); *Fitzgerald v. Citigroup, Inc.*, 2007 WL 582965 (S.D.N.Y. Feb. 23, 2007); *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233 (S.D.N.Y. 2006); *In re Goldman Sachs Mut. Funds*, 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222 (S.D.N.Y.), *adhered to on reconsideration*, 403 F. Supp. 2d 310 (S.D.N.Y. 2005), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007); *Verkouteren v. Blackrock Fin. Mgmt., Inc.*, 1999 WL 511411 (S.D.N.Y. July 20, 1999), *aff'd*, 208 F.3d 204 (2d Cir. 2000); *Strougo v. BEA Assocs.*, 1999 WL 147737 (S.D.N.Y. Mar. 18, 1999).

2 Annual Report, Calamos Family of Funds (Oct. 31, 2014) at 230-34, *available at* http://www.calamos.com/FundInvestor/MutualFunds/Fund.aspx?name=Growth#_literature_tab.



- A great deal of Plaintiffs' Complaint rests on assertions relating to services, fees, and agreements dating well outside the one-year period preceding the filing of the Complaint. *E.g.*, Cmplt. ¶¶ 61-71, 79-88, 100-06, 127-33. Section 36(b)(3) could not be clearer that the only *ex post* fees at issue are those paid in the one year prior to the filing of the complaint. Hence, courts uniformly reject attempts to rely on allegations/evidence from periods that precede this one-year period to suggest that the most recent prior year's fees were excessive. *E.g.*, *In re Scudder*, 2007 WL 2325862, at *16-17; *In re AllianceBernstein*, 2006 WL 74439, at *2.

- Plaintiffs' insinuations that CA's advisory fee was excessive because (a) the Fund allegedly underperformed certain benchmarks (Cmplt. ¶¶ 120-25), (b) the fee is higher than the average for purportedly comparable funds (*id.* ¶¶ 72-78), or (c) CA charged a lower advisory fee to non-mutual fund clients (who require less services and generate less regulatory/entrepreneurial risk for CA), have been rejected routinely as a matter of law. *E.g.*, *Amron*, 464 F.3d at 345; *Gartenberg*, 694 F.2d at 930 n.3; *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 687 (D.N.J. 2007). Likewise, Plaintiffs' allegations regarding the profit or "fall-out benefits" CA purportedly derives are legally insufficient. *E.g.*, *Meyer v. Oppenheimer Mgmt. Corp.*, 707 F. Supp. 1394, 1401 (S.D.N.Y. 1988), *aff'd*, 895 F.2d 861 (2d Cir. 1990); *In re Am. Mut. Funds Fee Litig.*, 2009 WL 5215755, at *53 (C.D. Cal. Dec. 28, 2009).

- The allegation that CA failed to share economies of scale with shareholders as the Fund's assets under management ("AUM") increased (Cmplt. ¶¶ 89-109) is based on a fatally flawed premise. During the only relevant period, i.e., the year prior to the filing of the complaint, the Fund's AUM *declined*, yet "[t]he concept of 'economies of scale' assumes that *as a mutual fund increases in size*, its operational costs decrease." *Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1237 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 590 (2d Cir. 1991) (emphasis added).

- Plaintiffs' accusations that the Fund's Trustees were derelict in their duty or that the five Independent Trustees were dominated by John Calamos, Sr. (*e.g.*, Cmplt. ¶¶ 155-204, 249-63) are not only baseless but legally deficient. *E.g.*, *Verkouteren*, 1999 WL 511411, at *2-3.

- Plaintiffs' claim regarding the alleged excessiveness of the distribution fee paid to CFS fails for many reasons, including that Plaintiffs ignore that substantially all of the "fees" received by CFS are in turn paid to third parties (i.e., broker-dealers) for their work in distributing the Fund.[3]

---

[3] Plaintiffs' Complaint is devoid of the theories asserted in other recent section 36(b) cases in which motions to dismiss have been denied, but to which Plaintiffs are almost certain to point notwithstanding this critical distinction. *E.g.*, *In re Blackrock Mut. Funds Advisory Fee Litig.*, 2015 WL 1418848 (D.N.J. Mar. 27, 2015) (alleging that, within the statutory one-year period, adviser provided same services as both adviser and subadviser yet charged lower fees as subadviser); *Zehrer v. Harbor Capital Advisors, Inc.*, 2014 WL 6478054 (N.D. Ill. Nov. 18, 2014) (alleging that adviser delegated substantially all duties to subadviser yet retained significant portion of advisory fee).

Honorable Edgardo Ramos, U.S.D.J.
May 4, 2015
Page 4

Respectfully,

David A. Kotler

cc: Counsel of Record