**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| | : | |
| SAUL CHILL and SYLVIA CHILL, for | : | |
| the use and benefit of the CALAMOS | : | |
| GROWTH FUND, | : | |
| | : | No. 15-cv-01014 (ER) |
| Plaintiffs, | : | |
| | : | ECF CASE |
| v. | : | |
| | : | <u>ORAL ARGUMENT REQUESTED</u> |
| CALAMOS ADVISORS LLC and | : | |
| CALAMOS FINANCIAL SERVICES LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT
<u>OF THEIR MOTION TO DISMISS</u>**

**DECHERT LLP**

Matthew L. Larrabee
David A. Kotler
Catherine V. Wigglesworth
Jocelyn V. Hanamirian
Melanie MacKay
1095 Avenue of the Americas
New York, NY  10036-6797
Telephone:  (212) 698-3500

*Counsel for Defendants Calamos Advisors
LLC and Calamos Financial Services LLC*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...........................................................................................................2

I.   PLAINTIFFS MISCHARACTERIZE THE SECTION 36(B) CASE LAW ...................2

     A.   Plaintiffs' Misreading Of *Jones* ...............................................................2

     B.   Plaintiffs' Erroneous Reliance On Inapplicable Decisions From Critically
          Distinguishable Section 36(b) Lawsuits .....................................................3

     C.   Plaintiffs' Legally Unsupported Efforts To Write Section 36(b)'s One-
          Year Jurisdictional Period Out Of Existence ...............................................4

II.  PLAINTIFFS STILL FAIL TO PROVIDE A PLAUSIBLE BASIS FOR THE
     COURT TO OVERTURN THE BUSINESS JUDGMENT OF THE FUND'S
     INDEPENDENT TRUSTEES IN APPROVING CA'S ADVISORY FEE ......................5

     A.   Plaintiffs' Belated Concession That The Fund's Independent Trustees Are
          In Fact Independent .................................................................................5

     B.   Plaintiffs' Continued Reliance On Their Circular And Conclusory
          Assertion That The Independent Trustees Must Have Lacked
          Conscientiousness ...................................................................................6

     C.   Plaintiffs' Continued Reliance On Legally Inapt Fee Comparisons ...............7

     D.   Plaintiffs' Continued Reliance On Implausible And Legally Deficient
          Economies Of Scale Allegations ...............................................................9

     E.   Plaintiffs' Continued Failure To Make Any Legally Cognizable
          Allegations Regarding The Quality Of CA's Advisory Services ...................9

     F.   Plaintiffs' Continued Reliance On Legally Deficient Fall-Out Benefits
          Allegations ...........................................................................................10

III. PLAINTIFFS' ATTACK BASED ON CFS'S DISTRIBUTION FEES ALSO
     REMAINS LEGALLY DEFICIENT ...............................................................10

CONCLUSION.......................................................................................................10

## **TABLE OF AUTHORITIES**

**CASES**

*Am. Chems. & Equip., Inc. 401(K) Ret. Plan v. Principal Mgmt. Corp.*,
    2014 WL 5426908 (S.D. Iowa Sept. 10, 2014) .......................................................................3

*Amron v. Morgan Stanley Inv. Advisors, Inc.*,
    464 F.3d 338 (2d Cir. 2006).......................................................................................................3

*Batra v. Inv'rs Research Corp.*,
    144 F.R.D. 97 (W.D. Mo. 1992) ...............................................................................................4

*Curd v. SEI Inv. Mgmt. Corp.*,
    2015 WL 4243495 (E.D. Pa. July 14, 2015) .............................................................................3

*Curran v. Principal Mgmt. Corp., LLC*,
    2010 WL 2889752 (S.D. Iowa June 8, 2010) ...........................................................................3

*Finkel v. Putnam Convertible Opp. & Income Tr.*,
    1997 WL 371177 (S.D.N.Y. July 3, 1997) ...............................................................................6

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
    694 F.2d 923 (2d Cir. 1982)......................................................................................................9

*Goodman v. J.P. Morgan Inv. Mgmt. Inc.*,
    2015 WL 965665 (S.D. Ohio Mar. 4, 2015) .............................................................................3

*Hunt v. Invesco Funds Grp., Inc.*,
    2006 WL 1581846 (S.D. Tex. June 5, 2006) ............................................................................4

*In re Blackrock Mut. Funds Advisory Fee Litig.*,
    2015 WL 1418848 (D.N.J. Mar. 27, 2015)...........................................................................3, 4

*In re Federated Mut. Funds Excessive Fee Litig.*,
    2009 WL 5821045 (W.D. Pa. Sept. 30, 2009) ..........................................................................4

*In re Franklin Mut. Funds Fee Litig.*,
    478 F. Supp.2d 677 (D.N.J. 2005) ............................................................................................7

*Jones v. Harris Assocs. L.P.*,
    559 U.S. 335 (2010)......................................................................................................... passim

*Jones v. Harris Assocs. L.P.*,
    2015 WL 4646487 (7th Cir. Aug. 6, 2015)...........................................................................2, 8

*Kasilag v. Hartford Inv. Fin. Servs. LLC*,
    2012 WL 6568409 (D.N.J Dec. 17, 2012) ...............................................................................3

*Reso v. Artisan Partners Ltd. P'ship*,
 2011 WL 5826034 (E.D. Wis. Nov. 18, 2011) ..........................................................................3

*Sins v. Janus Capital Mgmt., LLC*,
 2006 WL 3746130 (D. Colo. Dec. 15, 2006).............................................................................4

*Striglabotti v. Franklin Res., Inc.*,
 2005 WL 645529 (N.D. Cal. Mar. 7, 2005)...............................................................................4

*Zehrer v. Harbor Capital Advisors, Inc.*,
 2014 WL 6478054 (N.D. Ill. Nov. 18, 2014) ...........................................................................3

**STATUTES**

15 U.S.C. § 80a-35............................................................................................... passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)........................................................................................ passim

## PRELIMINARY STATEMENT

In their desperate effort to avoid the unbroken line of Section 36(b) lawsuits that have been rejected by the Courts of this District—frequently at the pleadings stage—Plaintiffs' opposition to Defendants' motion to dismiss ("Opp. Br.") mischaracterizes the governing law, the indisputable facts, and even Plaintiffs' own Complaint.

The standard announced by the Supreme Court in *Jones v. Harris* did not, as Plaintiffs remarkably contend, "breathe new life" into Section 36(b) or overturn any of the cases rejecting Section 36(b) complaints indistinguishable from Plaintiffs'.  To the contrary, following *Jones*, Plaintiffs' Section 36(b) claim against CA[1] still fails because they do not plead a plausible basis to overturn the considered business judgment of the Fund's Independent Trustees in approving the fees paid to CA and CFS for the one year prior to the filing of Plaintiffs' Complaint. Plaintiffs' continued invocation of advisory fees charged by CA to non-mutual fund clients for years prior to Section 36(b)'s one-year jurisdictional limit does nothing to cure their Complaint's failure to meet the stringent *Jones* standard.  Nor can Plaintiffs ride the coattails of the recent rulings in cases attacking either (i) the "manager of managers" advisory model, or (ii) the disparity in fees charged by an adviser during Section 36(b)'s jurisdictional period to advise one mutual fund and sub-advise a different mutual fund, as CA indisputably neither employs the "manager of managers" model nor do Plaintiffs allege that it has charged a lower fee to sub-advise another mutual fund within this jurisdictional period.  Thus, those decisions provide no basis to ignore the authority within this Circuit rejecting Section 36(b) claims like Plaintiffs'.

Plaintiffs also now seek to walk away from several of the key allegations in their Complaint.  For example, Plaintiffs' opposition brief offers no explanation as to how CA possibly failed to share economies of scale with Fund shareholders during the Section 36(b) jurisdictional period when, as the Complaint concedes, the Fund's assets under management declined by more than 20 percent during this period.  Nor does Plaintiffs' brief provide any

---

[1]     The defined terms used in Defendants' moving brief will be used herein for ease of reference.

support for the Complaint's conclusory contention that the Independent Trustees must have been given "incomplete, inaccurate, and/or biased information" by CA—even though, as the Fund's SEC-filed annual report explains, the Independent Trustees were provided and did consider all of the information and assertions that form the basis of Plaintiffs' Complaint.

Whether under *Jones* or the series of Second Circuit/SDNY decisions rejecting Section 36(b) complaints prior to *Jones*, Plaintiffs have not pled a plausible basis to overturn the business judgment of the Fund's Independent Trustees in approving the fees paid to CA and CFS for the one year prior to the filing of Plaintiffs' Complaint. That considered judgment, as well as the investment decisions made by the Fund's thousands of shareholders to invest in the Fund as managed by CA and distributed by CFS in return for those publicly-disclosed fees—including by these Plaintiffs since 2005—should be respected. The Complaint should be dismissed.

<u>ARGUMENT</u>

## I.  PLAINTIFFS MISCHARACTERIZE THE SECTION 36(B) CASE LAW

### A.  Plaintiffs' Misreading Of *Jones*

Plaintiffs' lead argument that the Supreme Court's decision in *Jones* somehow "breathed new life"[2] into the 40 years of Section 36(b) jurisprudence preceding that decision—in which no plaintiff ever succeeded in establishing a Section 36(b) claim—is flatly wrong. As the Seventh Circuit confirmed last month by affirming the rejection of the Section 36(b) claim in *Jones* (a decision that Plaintiffs conspicuously ignore), *Jones* does <u>not</u> permit a court to question the "fairness or reasonableness" of CA's or CFS's fees under Section 36(b); instead, Section 36(b) is implicated only if such fees exceed "the outer bounds of arm's length bargaining."[3] Thus, as Judge Easterbrook aptly stated, *Jones* "is <u>less favorable</u> to plaintiffs" than the pre-*Jones* case law relied on by numerous courts to reject claims substantively indistinguishable from Plaintiffs'.[4]

---

[2]      Opp. Br. 1.

[3]      *Jones v. Harris Assocs. L.P.*, 2015 WL 4646487, at *1 (7th Cir. Aug. 6, 2015) ("*Jones II*") (emphasis added).

[4]      *Id.*

**B.      Plaintiffs' Erroneous Reliance On Inapplicable Decisions From Critically Distinguishable Section 36(b) Lawsuits**

Plaintiffs' misreading of *Jones* is far from their only legal error.  Even prior to the more rigorous *Jones* standard, Courts in this District routinely granted motions to dismiss Section 36(b) complaints like the one here, *i.e.*, premised on allegedly above-average advisory fees and allegedly below-average fund performance over some cherry-picked time period.[5]  To avoid this unbroken line of authority, Plaintiffs cite to recent decisions denying Rule 12(b) motions in Section 36(b) lawsuits that are critically distinguishable from Plaintiffs' Complaint.  As Defendants previously explained, those complaints—and the resulting decisions denying Rule 12(b) motions—are premised on one of two core factual predicates, neither of which is pled here: (i) the adviser's fees are excessive because it delegates all investment responsibilities to one or more sub-advisers (a "manager of managers" structure),[6] or (ii) within Section 36(b)'s one-year jurisdictional period, the adviser charged a higher rate to advise the subject fund than it did to sub-advise another mutual fund.[7]  Plaintiffs do not allege that CA employs the "manager of managers" model, and their allegations regarding CA's sub-advisory fees date well before the February 2014 start of the jurisdictional period in this case.  Hence, those decisions—none of which seeks to distinguish *Amron* or the numerous SDNY decisions rejecting Section 36(b) complaints (such as Plaintiffs') premised on the equation that above-average fees plus below-

---

[5]      *See, e.g.*, *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 346 (2d Cir. 2006) (affirming Rule 12(b)(6) dismissal) and the numerous SDNY decisions cited at Defs. Br. 12 n.59.

[6]      *Curd v. SEI Inv. Mgmt. Corp.*, 2015 WL 4243495, at *5 (E.D. Pa. July 14, 2015) (alleging that adviser delegated substantially all duties to sub-adviser yet retained significant portion of advisory fee); *Zehrer v. Harbor Capital Advisors, Inc.*, 2014 WL 6478054, at *3 (N.D. Ill. Nov. 18, 2014) (same); *Kasilag v. Hartford Inv. Fin. Servs. LLC*, 2012 WL 6568409, at *3 (D.N.J Dec. 17, 2012) (same); *Reso v. Artisan Partners Ltd. P'ship*, 2011 WL 5826034, at * 1 (E.D. Wis. Nov. 18, 2011) (alleging that adviser provided *de minimis* services).  Plaintiffs' reliance on *Am. Chems. & Equip., Inc. 401(K) Ret. Plan v. Principal Mgmt. Corp.*, 2014 WL 5426908, at *1 (S.D. Iowa Sept. 10, 2014) and *Curran v. Principal Mgmt. Corp., LLC*, 2010 WL 2889752 at *4 (S.D. Iowa June 8, 2010) (*vacated in part*, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011)) is also misplaced, as those cases involve a "fund of funds" structure.

[7]      *In re Blackrock Mut. Funds Advisory Fee Litig.*, 2015 WL 1418848, at *5-6 (D.N.J. Mar. 27, 2015) (alleging that, within the statutory period, adviser provided same services both as adviser to mutual fund owned by plaintiffs and sub-adviser to other mutual funds yet charged lower fees as sub-adviser); *Goodman v. J.P. Morgan Inv. Mgmt. Inc.*, 2015 WL 965665, at *2-3 (S.D. Ohio Mar. 4, 2015) (same).

3

average performance necessarily equals a Section 36(b) breach of fiduciary duty—are of no import here.

###### C. Plaintiffs' Legally Unsupported Efforts To Write Section 36(b)'s One-Year Jurisdictional Period Out Of Existence

While Plaintiffs also persist in seeking to hold CA liable for purportedly charging excessive fees for many years prior to Section 36(b)'s one-year jurisdictional period,[8] they cite no case (nor are we aware of any) in which a court held that advisory fees charged years prior to the jurisdictional limit—such as the advisory fees charged by CA in the early 2000s or the sub-advisory fees CA charged as far back as 2007—form the basis of a viable Section 36(b) claim. Judge Kram's rejection of precisely this argument in *In re AllianceBernstein* remains good law.[9]

The cases relied upon by Plaintiffs are wholly inapposite because, unlike Plaintiffs here, those plaintiffs were <u>not</u> seeking to rely on past sub-advisory fees charged outside of Section 36(b)'s jurisdictional period as the basis for establishing the alleged excessiveness of currently-charged advisory fees. Rather, they merely referenced the historical growth of a fund's AUM to its present-day size in support of their contention that the adviser failed to share economies of scale.[10] Even then, Plaintiffs' cases are further distinguishable because none stands for the proposition that a plaintiff can plausibly allege that a fee is excessive based on failure to share economies of scale where, as here, AUM <u>declined by 20%</u> during the jurisdictional period.

---

[8]     *E.g.*, Opp. Br. 6-9, 22-26.

[9]     *See* Defs. Br. 23 & n.93.  Plaintiffs also cite no case accepting their contention that the advisory/sub-advisory comparison is legally apt—which is unsurprising given the inherent differences in responsibilities and risks between the two roles.

[10]     *E.g., In re Blackrock*, 2015 WL 1418848, at *1, 5 (noting alleged AUM growth over six years with respect to economies of scale allegations, but relying solely on allegations with respect to the year preceding the complaint as to fee comparisons); *In re Federated Mut. Funds Excessive Fee Litig.*, 2009 WL 5821045, at *4 (W.D. Pa. Sept. 30, 2009) (historical AUM growth solely with respect to economies of scale allegations); *Striglabotti v. Franklin Res., Inc.*, 2005 WL 645529, at *3 (N.D. Cal. Mar. 7, 2005) (same); *Sins v. Janus Capital Mgmt., LLC*, 2006 WL 3746130, at *3 (D. Colo. Dec. 15, 2006) (noting historical fees only in the context of the fact that advisory fees decreased as a percentage of AUM over nine years).  Plaintiffs' remaining cases concern the scope of discovery as opposed to the sufficiency of the complaint.  *See Hunt v. Invesco Funds Grp., Inc.*, 2006 WL 1581846, at *7-8 (S.D. Tex. June 5, 2006); *Batra v. Inv'rs Research Corp.*, 144 F.R.D. 97, at 98-99 (W.D. Mo. 1992).

## II. PLAINTIFFS STILL FAIL TO PROVIDE A PLAUSIBLE BASIS FOR THE COURT TO OVERTURN THE BUSINESS JUDGMENT OF THE FUND'S INDEPENDENT TRUSTEES IN APPROVING CA'S ADVISORY FEE

Plaintiffs also continue to rely on a series of assertions that, even at the pleadings stage, do not provide a plausible basis for this Court to ignore the business judgment reached by the Fund's Independent Trustees—after the fulsome and rigorous information-gathering and deliberative process described in the Fund's Annual Report—that continuation of the investment advisory agreement with CA at the resulting fee level of 0.83% was appropriate. Plaintiffs' Complaint therefore fails, regardless of how often, how vociferously, or in how many pages Plaintiffs repeat the same legally-deficient, illogical and conclusory allegations.

### A. Plaintiffs' Belated Concession That The Fund's Independent Trustees Are In Fact Independent

In their Complaint, which Plaintiffs say must be accepted because it is "well-pled,"[11] Plaintiffs assert that (i) the Fund's Trustees are only "nominally-independent," (ii) the in-person Trustee meeting mandated by the ICA for the express purpose of considering the approval of CA's management agreement was "significantly impacted, and ultimately controlled, by" CA, and (iii) the five Independent Trustees were so dominated by the one interested Trustee that the Independent Trustees "rubber-stamped the excessive investment advisory fees" sought by CA.[12]

Defendants' initial brief explains why Plaintiffs lack any legally cognizable—or good faith—basis to challenge the independence of trustees who are presumed by the ICA to be independent.[13] In response, Plaintiffs do not defend their bogus Complaint allegations, but rather seek to sweep them under the rug by blithely asserting that they are no longer challenging the Independent Trustees' lack of independence.[14] While Plaintiffs' belated concession of the independence of the Independent Trustees is noted, the Court also should note Plaintiffs'

---

[11]   *E.g.*, Opp. Br. 21.

[12]   Compl. ¶¶ 161, 167, 201.

[13]   Defs. Br. 15-19.

[14]   Opp. Br. 34 n.36.

eagerness to disavow their own "well-pled" allegations when it considers whether they have pled a plausible basis to ignore the business judgment of the now-concededly Independent Trustees.

**B.  Plaintiffs' Continued Reliance On Their Circular And Conclusory Assertion That The Independent Trustees Must Have Lacked Conscientiousness**

While Plaintiffs do cling to their Complaint allegations that the Independent Trustees must have lacked "conscientiousness" in reviewing/approving CA's Management Agreement "based on incomplete, inaccurate and/or misleading information" supplied by CA or by failing to obtain "more accurate and/or unbiased information,"[15] they still offer no basis to credit those allegations such that the business judgment of the Independent Trustees should be ignored.

As demonstrated in Defendants' initial brief, Plaintiffs do not identify any "more accurate and/or unbiased" materials that the Independent Trustees allegedly failed to consider, nor do they plead anything specific about the supposedly "incomplete, inaccurate, and/or misleading" information given to the Independent Trustees.  Instead, Plaintiffs still seek to substitute their own judgment for that of the Independent Trustees.  Thus, although the Fund's Annual Report explains that "the Trustees evaluated the Fund's actual management fee rate compared to the median management fee rate for other similar mutual funds, and also reviewed CA's management fee rates for its institutional accounts and for sub-advised funds," Plaintiffs argue—without a shred of factual support—that the Independent Trustees "uncritically accepted Defendants' unfounded rationalizations for the higher fee charged to the Fund" and "failed to determine whether the Fund actually received additional services, or whether any such services justified the fee disparity."[16]  Plaintiffs cannot state a Section 36(b) claim by ignoring indisputable facts—especially those in an SEC filing—that put the lie to their *ipse dixit*.[17]  The

---

[15]     Opp. Br. 3, 12, 30-31.

[16]     Opp. Br. 31.

[17]     *E.g.*, *Finkel v. Putnam Convertible Opp. & Income Tr.*, 1997 WL 371177, at *3 (S.D.N.Y. July 3, 1997) ("Giving Plaintiff the 'benefit of all doubts' on a Rule 12(b)(6) motion to dismiss does not require courts to ignore contradictions between the allegations in the Complaint and disclosures in the Prospectus because such contradictions indicate that 'no set of additional facts could prove the plaintiff's claims'.") (citation omitted), *aff'd*, 162 F.3d 1147 (2d Cir. 1998).

cases cited by Plaintiffs, in addition to their factual inapplicability (*see* Point I.B), do not require that a court credit a conclusory attack on a fund board's conscientiousness—particularly a board that has already negotiated a fee concession to address concerns regarding the Fund's performance.[18]   Allowing Plaintiffs into discovery in quest of a claim that they cannot plausibly plead would "violate a stated intent of the drafters of [Section 36(b)]… to prevent the harassment of investment advisors by ill-founded or nuisance law suits, the so-called strike suit."[19]

Finally, Defendants do not contend that the decision of the Independent Trustees to approve CA's Management Agreement is "impregnable," as Plaintiffs erroneously suggest.[20] Rather, as explained in Defendants' moving brief, *Jones* requires that "[w]here the board's process for negotiating and reviewing investment-adviser compensation is robust, a reviewing court should afford commensurate deference to the outcome of the bargaining process."[21] Hence, Defendants' position remains that because Plaintiffs did not, and cannot, plausibly allege "additional evidence that the fee exceeds the arm's-length range," a court may not "supplant the judgment of disinterested directors apprised of all relevant information."[22]

### C.    Plaintiffs' Continued Reliance On Legally Inapt Fee Comparisons

While Plaintiffs continue to rely heavily on their allegations that CA's advisory fee is excessive because it is higher than (a) the fee currently paid to CA by its institutional clients, (b) the fee previously paid to CA by other mutual funds it sub-advised, and (c) the fees other supposedly comparable mutual funds pay to other supposedly-comparable mutual fund advisers,[23] they still fail to demonstrate that those comparisons are legally apt.

---

[18]    *See* Defs. Br. 7 & n.33.

[19]    *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp.2d 677, 687 (D.N.J. 2007) (quotation and citation omitted).

[20]    Opp. Br. 19.

[21]    *Jones v. Harris Associates L.P.*, 559 U.S. 335, 351 (2010).

[22]    *Id.* at 352; Defs. Br. 13-15.

[23]    Opp. Br. 6-8, 32.

Plaintiffs are wrong to suggest that *Jones* rewrote Section 36(b) to guarantee parity among all fees charged by investment advisers.[24]  To the contrary, as *Jones* recognizes (in words ignored by Plaintiffs), "courts should be mindful that the [ICA] does <u>not</u> necessarily ensure fee parity between mutual funds and institutional clients."[25]  Plaintiffs compound their error by attacking the straw-man argument that a fee disparity is never relevant to whether a Section 36(b) claim has been pled.[26]  Rather, Defendants' point was (and still is) that (a) numerous SDNY courts have rejected Section 36(b) claims—even at the pleadings stage—premised on the alleged disparity in fees charged by an adviser to a mutual fund and to the adviser's institutional clients due to the inherent differences in advisory services for those different clients, and (b) because the Independent Trustees received information regarding the differences in services and fees for the Fund and for CA's institutional clients (among all of the other information the Independent Trustees requested and received) and determined that CA's advisory fee was appropriate, Plaintiffs have not pled a plausible basis to overturn their business judgment.[27]

Indeed, while Plaintiffs reprise their conclusory allegation that the services provided by CA to the Fund and to its institutional clients are "not merely similar, but [] identical,"[28] Plaintiffs do not plausibly allege any facts demonstrating such "identity."  The only support that Plaintiffs offer relates not to institutional clients but to the sub-advisory services that CA provided to other mutual fund complexes years ago.[29]  Plaintiffs' continued attempt to challenge CA's fee for advising the Fund by comparing it to the fees CA received for sub-advising other mutual funds under agreements that ended well before Section 36(b)'s jurisdictional period continues to fail as a matter of law for the reasons articulated in Defendants' moving brief.[30]

---

[24]    Opp. Br. 1.

[25]    *Jones*, 559 U.S. at 350 (emphasis added).

[26]    Opp. Br. 19.

[27]    *See Jones II*, 2015 WL 4646587, at *2 (rejecting fee comparison to institutional clients).

[28]    Opp. Br. 6.

[29]    Opp. Br. 19-20.

[30]    Defs. Br. 22-23.

Finally, Plaintiffs' Opposition makes no attempt to distinguish the authority set forth in Defendants' moving brief explicitly rejecting as legally inapt comparisons to fees charged by other advisers to other mutual funds without some "additional evidence" that the advisory fees exceeded the outer bounds of arm's length bargaining.[31]  Absent plausible allegations to this effect, "[r]eliance on prevailing industry advisory fees will not satisfy § 36(b)."[32]

### D. Plaintiffs' Continued Reliance On Implausible And Legally Deficient Economies Of Scale Allegations

With respect to their conclusory contention that CA failed to share economies of scale with the Fund's shareholders, Plaintiffs' brief is completely silent on the threshold argument presented in Defendants' moving brief that there cannot be a failure to share economies of scale where, as indisputably is the case here, the Funds' assets under management declined 20 percent in the year prior to the filing of the lawsuit.  Plaintiffs' full silence on this point is all the concession necessary to reject their economies of scale allegations in total.[33]

### E. Plaintiffs' Continued Failure To Make Any Legally Cognizable Allegations Regarding The Quality Of CA's Advisory Services

Plaintiffs likewise still fail to put forth any real claim regarding the quality of the services CA provides to the Fund.  To be sure, Plaintiffs continue to cherry-pick certain time periods over which they allege that the Fund underperformed certain benchmarks—yet Plaintiffs continue to ignore both the positive long-term performance of the Fund and that courts have expressly rejected the attempt to use performance as a proxy for the quality of services provided.[34]

Equally unavailing is Plaintiffs' new argument that entities other than CA provide services to the Fund.[35]  Defendants do not dispute that the Fund pays a separate fee to certain providers for separate services.  Yet this fact does nothing to alter the wide range of services

---

[31]     Defs. Br. 23-24.

[32]     *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 929 (2d Cir. 1982).

[33]     If more is needed, Plaintiffs also fail to address the case law from this District requiring that they plead "actual transaction costs at issue" and rejecting their breakpoint allegations.  *See* Defs. Br. 24-25.

[34]     Defs. Br. 25-26.

[35]     Opp. Br. 20-21.

beyond investment, trading and portfolio management services that CA itself indisputably provides to the Fund pursuant to the Management Agreement.[36]  Moreover, none of Plaintiffs' allegations even purports to question the quality of any services that CA provides to the Fund.

> **F.    Plaintiffs' Continued Reliance On Legally Deficient Fall-Out Benefits Allegations**

In addition to the legal reasons set forth in Defendants' moving brief, Plaintiffs' attempt in their brief to prop up their "fall-out benefit" theory falls flat.  For example, Plaintiffs' assertion that CA "replicated" the Fund's investment strategy for other clients is directly contradicted by allegations in the Complaint, which acknowledge: (i) "it is extremely difficult, if not impossible, to replicate the Calamos Growth Fund strategy and portfolio holdings of the Growth Fund," and therefore (ii) CA can and will use a different investment strategy for other clients.[37]

## III.    PLAINTIFFS' ATTACK ON CFS'S DISTRIBUTION FEES ALSO REMAINS LEGALLY DEFICIENT

Finally, as concerns Plaintiffs' claim regarding the distribution fee paid to CFS, Plaintiffs' Opposition merely repeats the allegations against CFS set forth in the Complaint.[38]  Yet as explained in Defendants' moving brief, those allegations do not even acknowledge that a large portion of the distribution fees consists of pass-through expenses, nor do Plaintiffs point to any legally cognizable basis that would support the conclusion that the distribution fee was "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining."[39]

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' moving brief, Plaintiffs' Complaint should be dismissed in its entirety.

---

[36]    *See* Strauss Decl. Ex. A. at 1.

[37]    Compl. ¶ 65 n.9; *compare* Opp. Br. 29-30.

[38]    Opp. Br. 34-35.

[39]    *Jones*, 559 U.S. at 345.

Dated:  September 15, 2015

Respectfully submitted,

DECHERT LLP

/s/ Matthew L. Larrabee
Matthew L. Larrabee
David A. Kotler
Catherine V. Wigglesworth
Jocelyn V. Hanamirian
Melanie MacKay
1095 Avenue of the Americas
New York, NY  10036-6797
Telephone:  (212) 698-3500

*Counsel for Defendants Calamos Advisors LLC and Calamos Financial Services LLC*

11