# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SAUL CHILL and SYLVIA CHILL, for the use and benefit of the CALAMOS GROWTH FUND, | : | |
| | : | |
| | : | |
| | : | No. 15-cv-01014 (ER) |
| Plaintiffs, | : | |
| | : | ECF CASE |
| v. | : | |
| | : | ORAL ARGUMENT REQUESTED |
| CALAMOS ADVISORS LLC | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANT CALAMOS ADVISORS LLC'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY
EXCLUDE THE PROPOSED EXPERT OPINIONS OF ARTHUR B. LABY**

DECHERT LLP
Matthew L. Larrabee
David A. Kotler
Catherine V. Wigglesworth
Amanda Tuminelli
Brendan Herrmann
Samantha Rosa
1095 Avenue of the Americas
New York, NY  10036-6797
Telephone:  (212) 698-3500

*Counsel for Defendant Calamos
Advisors LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTS RELEVANT TO LABY'S PROPOSED OPINIONS ...................................... 3

I.      LABY'S UNCHALLENGED QUALIFICATIONS ......................................... 3

II.     LABY'S PROPOSED OPINIONS AND PLAINTIFFS' LIMITED *DAUBERT*
        CHALLENGE ................................................................................................. 4

ARGUMENT .............................................................................................................. 6

I.      LEGAL STANDARD GOVERNING PLAINTIFFS' MOTION .................... 6

II.     PLAINTIFFS MISCHARACTERIZE LABY'S PROPOSED OPINIONS ...... 7

III.    PLAINTIFFS' COMPLAINTS ABOUT LABY'S INTERVIEW OF TWO OF
        THE FUND'S INDEPENDENT TRUSTEES ARE BOTH BASELESS AND
        CONTRADICTED BY THE CASE LAW .................................................... 11

CONCLUSION ......................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Alder, Coleman Clearing Corp.*,
  1998 WL 160036 (Bankr. S.D.N.Y. Apr. 3, 1998) ................................................................12

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002)....................................................................................................6

*Burks v. Lasker*,
  441 U.S. 471 (1979)..................................................................................................................9

*Cramer v. Hartford Hosp.*,
  1997 WL 597117 (D. Conn. Sept. 3, 1997) ..........................................................................12

*Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*,
  878 F. Supp. 884 (E.D. La. 1995) .........................................................................................11

*E.E.O.C. v. Beauty Enters., Inc.*,
  2005 WL 6003547 (D. Conn. Mar. 24, 2005) ........................................................................6

*Gartenberg v. Merrill Lynch Asset Mgt., Inc.*,
  694 F.2d 923 (2d Cir. 1982)................................................................................................2, 8

*Hinzo v. New Mexico Corr. Dep't*,
  2016 WL 3156071 (D.N.M. May 19, 2016) ..........................................................................11

*Jones v. Harris Assocs., L.P.*,
  559 U.S. 335 (2010)........................................................................................................2, 7, 10

*Krinsk v. Fund Asset Mgt., Inc.*,
  715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 404 (2d Cir. 1989) ..............................2, 8

*Lizotte v. New York City Health & Hosps. Corp.*,
  1990 WL 267421 (S.D.N.Y. Mar. 13, 1990) .........................................................................11

*Louis Vuitton Malletier S.A. v. Sunny Merch., Corp.*,
  97 F. Supp. 3d 485 (S.D.N.Y. 2015).......................................................................................6

*Macaluso v. Herman Miller, Inc.*,
  2005 WL 563169 (S.D.N.Y. Mar. 10, 2005) ........................................................................12

*In re Orchard Enters., Inc. S'holder Litig.*,
  88 A.3d 1 (Del. Ch. 2014) ........................................................................................................8

*Roselink Inv'rs, L.L.C. v. Shenkman*,
   386 F. Supp. 2d 209 (S.D.N.Y. 2004) ....................................................................8

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ...........................................................................10

*Travelers Indem. Co. v. Northrop Grumman Corp.*,
   3 F. Supp. 3d 79 (S.D.N.Y. 2014), *aff'd*, 677 F. App'x 701 (2d Cir. 2017) ...........................12

*Zhao v. Kaleida Health*,
   2008 WL 346205 (W.D.N.Y. Feb. 7, 2008) ...........................................................12

**Other Authorities**

3A Fletcher Cyc. Corp. § 1029 .........................................................................................8

Fed. R. Evid. 703 ...............................................................................................................6, 11

## PRELIMINARY STATEMENT

Plaintiffs' Motion to Partially Exclude the Proposed Expert Opinions of Arthur B. Laby ("Laby Br.") remarkably addresses neither Professor Laby's qualifications nor <u>any</u> of the substantive opinions he will offer at trial.  Specifically, Plaintiffs concede Laby's expert qualifications and raise no dispute with his opinions that (i) the Board of Trustees of the Growth Fund (the "Fund") is highly qualified and independent;[1] (ii) the Board's governance structures are strong;[2] (iii) the Independent Trustees' process for reviewing the investment management agreement ("IMA") between Calamos Advisors LLC ("CAL") and the Fund is robust;[3] and (iv) the Independent Trustees request, receive, and consider thorough information regarding the factors important to their review of the IMA.[4]

Instead, Plaintiffs raise two unusual complaints that are both off the mark.  First, Plaintiffs challenge Laby's supposed opinion that the Board's approval of the IMA is "███████ ████████████████████."[5]  However, as explained below, Laby offers no such opinion in this case.  Second, Plaintiffs complain about Laby's interview of Independent Trustees Stephen Timbers and John Neal.[6]  This argument is a wild over-reaction to a routine due diligence interview of two fact witnesses who were deposed by Plaintiffs,[7] conducted by an expert who himself was deposed about the interview.  In short, Plaintiffs' arguments in support of the exclusion of these purported opinions are flawed on multiple levels.

Plaintiffs' first argument is based on fundamental misunderstandings of both the opinions Laby offers and the importance under Section 36(b) of the business judgment exercised by mutual fund independent trustees.  To begin, Laby is <u>not</u> offering an opinion that the Court should apply the "business judgment rule," as that term is understood in corporate litigation, to

---

[1] Expert Report of Arthur B. Laby ("Laby Rpt.") at 1 (McNeela Decl. Ex. A to Laby Br.).

[2] *Id.*

[3] *Id.*

[4] *Id.* 2.

[5] Laby Br. 1.

[6] *Id.* 2.

[7] Indeed, the interview was necessitated by the fact that the deposition examination was limited and superficial on some points.

evaluate the effect of the Independent Trustees' approval of the IMA.  It is true (and seemingly uncontroversial) that, as Laby observed, the decision regarding whether to approve the IMA is committed to the sound business judgment of the Independent Trustees.[8]  Courts, including the Second Circuit,[9] recognize as much, as has Plaintiffs' own expert.[10]  That does <u>not</u> mean, however, that the Court must apply the business judgment <u>rule</u> in determining the legal effect of approval by the Independent Trustees on a claim that a fund's advisory fee is excessive in violation of Section 36(b).  To the contrary, both CAL and Plaintiffs agree that the latter determination is governed by the Supreme Court's decision in *Jones*.[11]  Specifically, in *Jones*, the Supreme Court recognized that "if the disinterested directors considered the relevant factors, their decision to approve a particular fee agreement is entitled to considerable weight, even if a court might weigh the factors differently."[12]  As CAL pointed out in its summary judgment papers, approval by the Independent Trustees does not necessarily end the analysis.  Rather, if (and only if) a plaintiff comes forward with additional evidence that the fee is beyond the range of arm's length bargaining, the court must continue its analysis.[13]  Laby is not offering an opinion that this Court should apply the business judgment rule and has no opinion about the proper application of *Jones*.  More importantly, there is no basis for excluding his actual opinions about the considered business judgments that the Fund's Independent Trustees in fact rendered in approving CAL' advisory fee.

Plaintiffs' second argument—that Laby's interview of Independent Trustees Stephen Timbers and Jack Neal prior to the issuance of his report was somehow improper[14]—is

---

[8] Laby Rpt. 8.

[9] *Gartenberg v. Merrill Lynch Asset Mgt., Inc.*, 694 F.2d 923, 928 (2d Cir. 1982) ("[T]he court is not authorized 'to substitute its <u>business judgment</u> for that of a mutual fund's board of directors in the area of management fees'") (internal quotation omitted) (emphasis added); *Krinsk v. Fund Asset Mgt., Inc*., 715 F. Supp. 472, 485 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 404 (2d Cir. 1989) (same).

[10] Deposition Transcript of Mercer Bullard ("Bullard Dep.") 101:22-102:5 (Tuminelli Decl. Ex. 4 to CAL's Memorandum of Law in Support of Its Motion to Exclude the Testimony and Opinions of Plaintiffs' Expert Witnesses ("CAL *Daubert* Br.")).

[11] *Jones v. Harris Assocs., L.P.*, 559 U.S. 335 (2010).

[12] *Id*. at 351.

[13] *See* CAL's Memorandum of Law in Support of Its Motion for Summary Judgment ("CAL SJ Br.") at 17, 21-22. Plaintiffs have wholly failed to identify any such evidence here.  *Id*. at 21-27.

[14] Laby Br. 11.

unsupported and incorrect.  Laby's interview was necessary due to open questions that were incompletely addressed in the depositions taken by Plaintiffs' counsel, and his interview is the type of information upon which an expert in Laby's field would rely.  Even if Plaintiffs were correct that Timbers' and Neal's statements during that interview were inadmissible, it is black-letter law that evidence need not be admissible to form a part of an expert's reliance materials. Plaintiffs' argument that they would somehow be prejudiced by this interview is unavailing, as is their assertion that they "will be unable to effectively cross examine [] Laby, or . . . Timbers and Neal at trial."[15]  In fact, Plaintiffs have previewed their cross examination in the brief they filed.[16]  Regardless, prejudice arguments under Rule 403 are not appropriate *Daubert* arguments justifying the exclusion of expert testimony.

Plaintiffs' motion to partially exclude Laby's proposed opinions should be denied in its entirety.

## FACTS RELEVANT TO LABY'S PROPOSED OPINIONS

### I.   LABY'S UNCHALLENGED QUALIFICATIONS

CAL's mutual fund board governance expert is Arthur Laby, a *magna cum laude* graduate of the University of Pittsburgh and the Boston University School of Law, a law professor at Rutgers Law School, and a Co-Director of the Rutgers Center for Corporate Law and Governance.[17]  Prior to joining Rutgers, Laby served on the U.S. Securities and Exchange Commission staff from 1996 through 2005.  Laby began at the SEC in the Division of Investment Management, which specializes in investment company and investment adviser regulation.[18]  Laby served as the supervisor of the Task Force on Investment Adviser Regulation, where he was responsible for administrative rulemaking and other regulatory matters specific to the regulation of investment advisers.[19]  Laby subsequently served as Assistant General Counsel

---

[15] Laby Br. 2.

[16] *E.g., id.* 11 (""); *id.* ("                    "); *id.* 12 ("                    "); *id.* ("                    ").

[17] Laby Rpt. 3.

[18] *Id.*

[19] *Id.* 3-4.

for the SEC, where he supervised lawyers responsible for advising senior SEC staff on rule-making, regulatory and enforcement matters related to mutual funds and investment advisers, including enforcement cases against investment companies, investment advisers, and their affiliates.[20]

Laby is a member of the American Law Institute and the Philadelphia Compliance Roundtable, which gathers regularly to discuss the operation of investment companies, investment advisers, and other financial services providers and the regulatory structure applicable to investment companies and investment advisers.[21]  Laby also is a member of the American Bar Association Subcommittee on Investment Companies and Investment Advisers Task Force and serves on the Executive Committee of the Securities Regulation Section of the Association of American Law Schools.  Laby previously completed a three-year term on the Investment Management Regulation Committee of the New York City Bar Association.[22]

Laby has published extensively in the field of mutual funds and investment advisers.  He is the co-author of the treatise *The Regulation of Money Managers: Mutual Funds and Advisers*.  Laby's writings also have appeared as chapters in books as well as law review articles published by the *Washington Law Review*, the *Boston University Law Review*, the *Villanova Law Review*, the *Review of Banking & Financial Law*, *The Business Lawyer*, the *American University Law Review*, the *Buffalo Law Review*, and the *Brooklyn Journal of Corporate, Financial and Commercial Law*, among others.[23]  Laby's work has been cited in numerous academic and practitioner-oriented journals.

## II.   LABY'S PROPOSED OPINIONS AND PLAINTIFFS' LIMITED *DAUBERT* CHALLENGE

Based on his review of the extensive record in this case, including all of the materials received by the Board from 2010 through June 2017, Laby offers several opinions relating to the operations of the Fund's Board and its Independent Trustees.  Laby will testify that the Fund's

---

[20] *Id.* 3.

[21] *Id.* 4.

[22] *Id.*

[23] *Id.*

Independent Trustees are highly qualified individuals who act independently of CAL and in the context of strong structures that promote sound decision-making.[24]  He will opine that the Board's process for reviewing the IMA between CAL and the Fund is robust and will explain how the characteristics of the processes relevant to approving the IMA rebut Plaintiffs' proposed expert opinions regarding the independence and conscientiousness of the Board and the sufficiency of the information provided by CAL.[25]

 Specifically, Laby will testify that the Independent Trustees request, receive, and consider thorough information regarding the factors important to their review of the IMA, including the areas Plaintiffs' experts claim were not addressed by the Independent Trustees, such as (i) the Fund's fees and total expenses as compared to peer mutual funds and to CAL's institutional and sub-advisory client fees, and (ii) the Fund's performance, explanations for underperformance, and strategies to improve performance.[26]  Based upon his extensive review of the materials provided to the Board as well as the minutes of Board meetings, Laby will testify that consistently at their Board meetings, the Independent Trustees considered information from CAL related to: the nature and quality of services provided to the Calamos Funds; changes CAL was making to improve the nature and quality of services provided to the Calamos Funds and to the Fund in particular; and how the Calamos Funds, and the Fund in particular, were positioned for the coming year.[27]  During this time, the Independent Trustees asked CAL to explain the changes it was making to improve the nature and quality of services provided to the Funds, closely monitored these changes, and evaluated whether these changes were likely to be successful.[28]  Laby will testify that this deliberative process led the Independent Trustees to approve the IMA for the Fund based on, among other things, their business judgment that making these changes was in shareholders' best interests.[29]

---

[24] *Id.* 1.

[25] *Id*.

[26] *Id.* 2.

[27] *Id*.

[28] *Id*.

[29] *Id*.

If needed, Laby will also provide opinions rebutting specific assertions of Plaintiffs' proposed experts, Steven Pomerantz and Mercer Bullard.  Laby will testify that, contrary to Pomerantz's and Bullard's assertions, the information that CAL presented to the Independent Trustees was clear in the context in which it was requested and provided, and that, as part of their deliberations, the Independent Trustees carefully considered the materials they received, raised questions about those materials, and requested follow-up information as necessary.[30]

Plaintiffs' motion challenges none of the foregoing opinions directly.  Instead, Plaintiffs seek (i) to exclude Laby's supposed opinion that the Board's approval of the IMA is "governed by the 'business judgment rule',"[31] and (ii) to prevent Laby from testifying about, or basing his opinions on, his interview of Independent Trustees Timbers and Neal.[32]  Neither challenge has any merit.

## ARGUMENT

### I.    LEGAL STANDARD GOVERNING PLAINTIFFS' MOTION

CAL respectfully refers the Court to the discussion of the legal standards governing a *Daubert* motion set forth in CAL's Motion to Exclude the Testimony and Opinions of Plaintiffs' Experts Dr. Steven Pomerantz and Mercer Bullard.  CAL also notes several additional legal propositions directly implicated by the present motion.  First, a party's mere disagreement with the conclusion of an expert's opinion is not an appropriate ground on which to seek exclusion under *Daubert*.[33]  Second, it is black letter law that an expert may rely on facts or data that would not be inadmissible in evidence to form his or her opinion, as long as the information is of the sort that would be reasonably relied upon by experts in that particular field.[34]

Given the nature of Laby's proposed opinions, it is also important to keep in mind the substantive legal standard for Plaintiffs' Section 36(b) claim under the Supreme Court's *Jones*

---

[30] Laby Rpt. 2.

[31] Laby Br. 1.

[32] *Id*. 2.

[33] *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002); *Louis Vuitton Malletier S.A. v. Sunny Merch., Corp.*, 97 F. Supp. 3d 485, 503 (S.D.N.Y. 2015) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993)); *E.E.O.C. v. Beauty Enters., Inc.*, 2005 WL 6003547, at *5 (D. Conn. Mar. 24, 2005).

[34] Fed. R. Evid. 703.

decision.  In this case, the ultimate inquiry is whether CAL's advisory fee "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining."[35]  Contrary to Plaintiffs' insinuations throughout this lawsuit, the Court's task is <u>not</u> to assess the quantitative reasonableness of the fees, as the Supreme Court has recognized that Section 36(b) "does <u>not</u> call for judicial second-guessing" by courts that "are not well suited to make such precise calculations."[36]  Rather, the Court must first determine "the degree of deference that is due a board's decision to approve an adviser's fees."[37]  "Where a board's process for negotiating and reviewing investment-adviser compensation is robust, a reviewing court should afford commensurate deference to the outcome of the bargaining process" and not rewrite the results of the business decision made by the fund's board.[38]

## II.   PLAINTIFFS MISCHARACTERIZE LABY'S PROPOSED OPINIONS

Plaintiffs devote much of their brief to the proposition that Laby should not be permitted to testify that "the Board's approval of CAL's proposed advisory fees is governed by the 'business judgment rule.'"[39]  For reasons explained below, this argument is irrelevant and beside the point because Laby is not offering that opinion.  Nonetheless, to avoid any further confusion—like the confusion reflected in Plaintiffs' motion—it is important to clarify what Laby <u>will</u> testify about and why those opinions are proper under the applicable legal standard.

To be clear, Laby opines that ███████████████████████████████ █████████████████████████████████████████████████████ ████████████████████████.[40]  There is no basis, and Plaintiffs offer none, for excluding this testimony.  Plaintiffs themselves (as well as their proffered board expert) admit that the Independent Trustees utilize their business judgment in approving the IMA on an annual

---

[35] *Jones*, 559 U.S. at 346.

[36] *Id.* at 352-53 (emphasis added).

[37] *Id.* at 351-52.

[38] *Id.* at 351.

[39] Laby Br. 1.

[40] Laby Rpt. 1-2.

basis.[41]  Courts, including the Second Circuit in its seminal *Gartenberg* decision, likewise recognize that a fund's independent trustees exercise their "business judgment" in considering whether to approve a fund's advisory agreement.[42]  As Plaintiffs' purported expert put it: Section 36(b) "does not limit or expand, for example, the directors['] general corporate duty to exercise reasonable business judgment."[43]

The "business judgment <u>rule</u>," however, is a legal doctrine regarding how a court should evaluate the fact of a board's exercise of business judgment; that legal rule refers to a "principle of non-review"[44] "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in honest belief that the action taken was in the best interests of the company."[45]  It is "a common-law doctrine under which courts generally refuse to second-guess a business decision, so long as management made a reasonable effort to make an informed decision."[46]  "Unless one of its elements is rebutted, 'the court merely looks to see whether the business decision made was rational in the sense of being one logical approach to advancing the corporation's objectives.'"[47]  Only where the plaintiff is able to present evidence rebutting this presumption may the plaintiff proceed to trial.[48]  To repeat, this legal doctrine, *i.e.*, the "business judgment rule," is fundamentally distinct from the concept of "business judgment" as the outcome of a deliberative process.

---

[41] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"); Bullard Dep. 101:22-102:5 (Tuminelli Decl. Ex. 4 to CAL *Daubert* Br.) ("Q.  [] Is it your expert opinion that the decision whether to approve a management agreement is not committed to the valid exercise of the independent trustee's business judgment?  A.  It is committed to their exercise of business judgment."); *id.* 102:11-15 ("[36(b)] does not limit or expand, for example, the directors['] general corporate duty to exercise reasonable business judgment.").

[42] *Gartenberg*, 694 F.2d at 928 ("[T]he court is not authorized 'to substitute its *business judgment* for that of a mutual fund's board of directors in the area of management fees'") (internal quotation omitted) (emphasis added); *Krinsk*, 715 F. Supp. at 485 (same).

[43] Bullard Dep. 102:11-15 (Tuminelli Decl. Ex. 4 to CAL *Daubert* Br.).

[44] *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 34 (Del. Ch. 2014).

[45] *Roselink Inv'rs, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209, 216 (S.D.N.Y. 2004).

[46] 3A Fletcher Cyc. Corp. § 1029.

[47] *In re Orchard Enters.*, 88 A.3d at 34 (quotation omitted).

[48] *Roselink Inv'rs, L.L.C.* 386 F. Supp. 2d at 224.

CAL is <u>not</u> advocating in this case for the application of the business judgment rule. Laby's report similarly does <u>not</u> offer the opinion ███████████████████████ ███████████████████████████████████.[49]   Instead, he opines ████████████████ ████████████████████████, leaving for this Court the responsibility to evaluate the legal import of that judgment.  Within that context, it is true that in answering questions about the business judgment rule put to him by Plaintiffs' counsel at deposition, Laby expressed a view that ████████████████████████████████████████████████████████ ████████████████████████████."[50]  Laby could not have said otherwise given the questions asked and his answers are hardly remarkable—in most legal settings almost any board decision is likely to be evaluated under the business judgment rule.[51]  More important, this testimony is not a remotely proper basis for a *Daubert* motion.

In fact, Laby went on to explain that "████████████████████████████ ████████████,"[52] and that "██████████████████████████████████████ ████████████████████████████."[53]  This testimony underscores the fact that Laby is <u>not</u> offering an opinion as to what standard the Court should apply.  Laby may have discussed ████████████████████████████████████████████," but that is a far cry from advocating that the Court should apply a rule of unconditional deference in this case.  Plaintiffs certainly cannot manufacture a *Daubert* argument seeking to preclude Laby from testifying by asking direct deposition questions on a topic he will not testify about at trial.  Any such tactic would be particularly inappropriate on an issue where there is no dispute—here, the parties agree that this case is governed by the standard set forth by the Supreme Court in *Jones*.

---

[49] *E.g.*, Laby Rpt. 8 (███████████████████████████████████████████████ ████████"); *id.* 31 ("████████████████████████████████████████████████ ██████████████████████████████"); *id.* 61 ("██████████████████████████ ███████████████████████████████████████████████████████"); *id.* 74 ("██████ █████████████████████████████████").
[50] Deposition Transcript of Arthur Laby ("Laby Dep.") 74:15-22 (McNeela Decl. Ex. B to Laby Br.).
[51] *Cf. Burks v. Lasker*, 441 U.S. 471 (1979).
[52] Laby Dep. 83:8-9.
[53] *Id*. 83:25-84:4.

Under this agreed-upon standard, Laby's opinions about the Independent Trustees' exercise of business judgment are directly relevant and wholly proper.  As the *Jones* court held, "the expertise of the independent trustees of a fund, whether they are fully informed about all facts bearing on the [investment adviser's] service and fee, and the extent of care and conscientiousness with which they perform their duties are <u>important factors</u> to be considered in deciding whether they and the [investment adviser] are guilty of a breach of fiduciary duty in violation of § 36(b)."[54]  As such, the *Jones* standard does not call for a court to conduct a free ranging *de novo* review of fees; rather, the *Jones* court was clear that Section 36(b) "does not call for judicial second-guessing of informed board decisions."[55]  "[I]f the disinterested directors considered the relevant factors, their decision to approve a particular fee agreement is entitled to considerable weight, even if a court might weigh the factors differently."[56]  Against this backdrop, Laby's opinions about how the Independent Trustees exercised their business judgment in approving the IMA with CAL goes to the conscientiousness exercised by the Independent Trustees, one of the key factors under *Jones*, and is thus both relevant and helpful to the trier of fact.

Nor does Laby offer an impermissible legal opinion, as Plaintiffs claim.  Plaintiffs assert that Laby's supposed "████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████."[57]  That criticism is inapposite for the very reason that Laby is <u>not</u> offering <u>any</u> opinion about either the "applicability" or the "contours" of the business judgment rule or any other legal standard this Court should apply. The opinions Laby does in fact proffer are not legal in nature, but are quintessential opinion testimony based on Laby's experience in the investment management industry.[58]

---

[54] *Jones*, 559 U.S. at 349 (emphasis added).
[55] *Id*. at 352.
[56] *Id*. at 351.
[57] Laby Br. 7.
[58] *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 43 (S.D.N.Y. 2016).

### III. PLAINTIFFS' COMPLAINTS ABOUT LABY'S INTERVIEW OF TWO OF THE FUND'S INDEPENDENT TRUSTEES ARE BOTH BASELESS AND CONTRADICTED BY THE CASE LAW

Plaintiffs' argument that Laby's interview of Independent Trustees Jack Neal and Stephen Timbers was somehow inappropriate also does not pass muster. Laby's interview was conducted telephonically after Timbers and Neal were deposed by Plaintiffs, and prior to issuing his report. Laby includes this interview in his list of reliance materials, and references the interview in the portions of his report for which he uses the interview as a source.

Plaintiffs claim that the "statements of Messrs. Neal and Timbers are inadmissible hearsay."[59] But even if that were true, it is black letter law that an expert may rely on inadmissible evidence to form his or her opinions. As Fed. R. Evid. 703 expressly states, facts or data "need not be admissible" for an expert opinion founded thereon to be admissible, as long as an expert in the field would reasonably rely on such kinds of facts or data in forming an opinion on the subject.[60] While the underlying evidence may not be admissible at trial, this is no barrier to the expert's opinion at trial. Further, there is no requirement—and Plaintiffs cite none—that a plaintiff be permitted to "cross-examine" a witness interviewed by an expert. In fact, such interviews are regularly conducted outside the formal judicial process for purposes of expert testimony.[61]

Plaintiffs' utterly unexplained assertion that Laby "essentially admitted" that he interviewed Mr. Neal and Mr. Timbers "to permit them to modify damaging testimony from their depositions"[62] is flatly incorrect. The sole source Plaintiffs cite in support of this baseless claim is a portion of the deposition of Laby himself. In fact, as Laby testified in the portion of his testimony cited by Plaintiffs, he "███████████" certain topics raised by Plaintiffs' counsel at Mr. Timbers' deposition that were not fully addressed during the deposition, and to obtain

---

[59] Laby Br. 12.

[60] Fed. R. Evid. 703.

[61] *Lizotte v. New York City Health & Hosps. Corp.*, 1990 WL 267421, at *4 (S.D.N.Y. Mar. 13, 1990) (inadmissible "interviews [that] would be used solely to provide factual data for the expert's analysis" are not inappropriate); *Hinzo v. New Mexico Corr. Dep't*, 2016 WL 3156071, at *4 (D.N.M. May 19, 2016) (permitting interviews as "an acceptable method of gathering factual information to be used in forming and offering an expert opinion" over objection); *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 878 F. Supp. 884, 887 (E.D. La. 1995) (interviews are permissible sources of information for expert report).

[62] Laby Br. 12.

11

answers to relevant questions that Plaintiffs' counsel failed to ask.[63]  Moreover, Laby testified

that he would not characterize what Timbers said during his interview as "███████████████"

from his testimony at deposition.[64]  Rather, Timbers ████████████████████████████████

████████████████████████████████████████████████.  Plaintiffs similarly offer no

support for their desperate assertion that Laby is offering some unidentified opinion based on

unidentified statements that "contradicted the witnesses' actual sworn testimony"[65]—there is no

such opinion because there is no such statement.[66]

Finally, and in any event, all of Plaintiffs' arguments regarding Laby's interview of

Timbers and Neal go to the weight of his proposed opinions, not their admissibility.  Certainly, if

Laby had <u>not</u> interviewed any Independent Trustees, Plaintiffs would be making the opposite

argument—that Laby's opinions should be disregarded as unreliable because he did not "verify"

them with the Independent Trustees.  Plaintiffs' claim that they would be "prejudiced" by the

introduction of any opinions based on that interview because they will "not be able to effectively

cross-examine [] Laby[,] Timbers or Neal at trial regarding their interview statements,"[67] is

unpersuasive and, again, not a valid *Daubert* argument in this bench trial in any event.[68]  Indeed,

Plaintiffs have already deposed all of the participants in the interview, which is why they can

preview for the Court in some detail what their cross-examination strategy will be.[69]  This no

---

[63] Laby Dep. 187:4-7.

[64] *Id*. 187:21-188:10.

[65] Laby Br. 12.

[66] The cases Plaintiffs cite for the proposition that an expert opinion relying on an incorrect factual assumption should be precluded all concern situations in which the fact assumed by the expert had no factual support in the record.  *Macaluso v. Herman Miller, Inc*., 2005 WL 563169, at *6 (S.D.N.Y. Mar. 10, 2005) ("no admissible evidence" supported expert's assumption); *Travelers Indem. Co. v. Northrop Grumman Corp*., 3 F. Supp. 3d 79, 110 (S.D.N.Y. 2014), *aff'd*, 677 F. App'x 701 (2d Cir. 2017) ("speculation of an expert witness" that "directly conflict[ed]" with "the percipient testimony of a witness" should be discarded); *Zhao v. Kaleida Health*, 2008 WL 346205, at *8 (W.D.N.Y. Feb. 7, 2008) ("assumptions contained in [expert's] report are directly contradicted by" record evidence).  In contrast, the facts Laby relies on here are based upon the first-hand statements of the Independent Trustees.

[67] Laby Br. 12.

[68] *In re Alder, Coleman Clearing Corp*., 1998 WL 160036, at *8 (Bankr. S.D.N.Y. Apr. 3, 1998) (recognizing that "the 'unfair prejudice' element of Rule 403 'has no logical application to bench trials'") (citation omitted); *Cramer v. Hartford Hosp*., 1997 WL 597117, at *4 (D. Conn. Sept. 3, 1997) (rejecting claim that evidence should be excluded on basis of "unfair prejudice" in bench trial).

[69] *E.g.*, Laby Br. 11 ("████████████████████████"); *id.* ████████████████████████"); *id.* 12 ("████████████████████████"); *id.* ("████████████████████████████").

12

doubt explains why Plaintiffs effectively admit that their arguments go to the weight of Laby's testimony, not its admissibility.[70]  Plaintiffs' motion to exclude any of Laby's opinions that are based on the information he learned from Timbers and Neal should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to partially exclude the proposed expert opinions of Arthur Laby should be denied.

Dated:  March 12, 2018                          DECHERT LLP

                                                *David A. Kotler*

                                                Matthew L. Larrabee
                                                David A. Kotler
                                                Catherine V. Wigglesworth
                                                Amanda Tuminelli
                                                Brendan Herrmann
                                                Samantha Rosa
                                                1095 Avenue of the Americas
                                                New York, NY  10036-6797
                                                Telephone:  (212) 698-3500

                                                *Counsel for Defendant*
                                                *Calamos Advisors LLC*

---

[70] Laby Br. 13 (arguing that the Court "should, at a minimum, assign Professor Laby's opinions little weight").

13